# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 23-213 consolidated with 23-431 and 23-432

## IN RE: BRUCE CARLTON ANDERSON

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 268,928-A
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

**********

**JONATHAN W. PERRY
JUDGE**

**********

Court composed of Jonathan W. Perry, Sharon Darville Wilson, and Guy E. Bradberry, Judges.

**WRIT GRANTED, IN PART,
AND DENIED, IN PART.**

**Paul J. Politz**
**Samantha P. Griffin**
**Taylor, Wellons, Politz & Duhe LLC**
**1555 Poydras Street, Suite 2000**
**New Orleans, Louisiana  70112**
**(504) 525-9888**
**COUNSEL FOR APPELLANT:**
**Disability Rights Louisiana and**
**Melanie Bray**


**Pierre F. Gremillion**
**3500 N. Hullen Street**
**Metairie, Louisiana  70002**
**(504) 495-3165**
**COUNSEL FOR CURATOR/APPELLEE:**
**Carey Wayne Walker, Sr.**


**Maria A. Losavio**
**Losavio Law Office, LLC**
**1821 MacArthur Drive**
**Post Office Box 12420**
**Alexandria, Louisiana 71315-2420**
**(318) 767-9033**
**COUNSEL FOR:**
**Bruce Carlton Anderson**

**PERRY, Judge.**

Melanie Bray and the legal organization of Disability Rights Louisiana sought review of a trial court judgment ordering their disqualification and awarding sanctions against them in the amount of $7,000. For the reasons assigned in the companion opinion also issued on this day, *In Re: Anderson*, 23-432 (La.App. 3 Cir. 4/3/24), ___ So.3d ___, this writ is granted, in part, and denied, in part.

**WRIT GRANTED, IN PART, AND DENIED, IN PART.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

23-431 consolidated with 23-432 and 23-213

IN RE:  BRUCE CARLTON ANDERSON

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 268,928-A
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

**********

**JONATHAN W. PERRY**
**JUDGE**

**********

Court composed of Jonathan W. Perry, Sharon Darville Wilson, and Guy E. Bradberry, Judges.

**AFFIRMED.**

**Maria A. Losavio**
**Losavio Law Office, LLC**
**1821 MacArthur Drive**
**Post Office Box 12420**
**Alexandria, Louisiana 71315-2420**
**(318) 767-9033**
**COUNSEL FOR APPELLANT:**
    **Bruce Carlton Anderson**


**Pierre F. Gremillion**
**3500 N. Hullen Street**
**Metairie, Louisiana  70002**
**(504) 495-3165**
**COUNSEL FOR CURATOR/APPELLEE:**
    **Carey Wayne Walker, Sr.**


**Paul J. Politz**
**Samantha P. Griffin**
**Taylor, Wellons, Politz & Duhe, LLC**
**1555 Poydras Street, Suite 2000**
**New Orleans, Louisiana  70112**
**(504) 525-9888**
**COUNSEL FOR:**
    **Disability Rights Louisiana and**
    **Melanie Bray**

**PERRY, Judge.**

In this interdiction proceeding, the issue is whether the facts and law operative herein support the trial court judgment ordering the full interdiction of Bruce Carlton Anderson. For the reasons set forth below, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

On September 10, 2020, Carey Wayne Walker, Sr. ("Mr. Walker") filed a Petition for Interdiction, seeking to have his fifty-four-year-old nephew, Bruce Carlton Anderson ("Mr. Anderson"), interdicted.[1] According to Mr. Walker, since shortly after his birth, Mr. Anderson has suffered from intellectual and developmental disabilities; has no spouse, children, or siblings; and his parents are deceased. Mr. Walker claimed Mr. Anderson was living in an apartment with twenty-four-hour care provided by Leading Healthcare of Louisiana of Pineville ("Leading Healthcare") and was unable to care for himself or his property. Therefore, Mr. Walker sought to have Mr. Anderson evaluated by Leading Healthcare's doctor with a report of the doctor's findings provided to the court. Mr. Walker further sought to have Mr. Anderson interdicted, to be appointed as Mr. Anderson's curator, and to have Mr. Anderson's cousin, Stephanie Riley ("Ms. Riley"), appointed as undercuratrix.

The record reflects attorney Melanie Bray and Disability Rights Louisiana (hereinafter collectively referred to as "DRLA") filed declinatory and dilatory exceptions on behalf of Mr. Anderson. At the hearing of these exceptions held on November 2, 2020, the trial court appointed Joseph Kutch[2] as curator ad hoc to

---

[1] Mr. Anderson's date of birth is January 19, 1966.

[2] Joseph Kutch served as curator ad hoc until March 2021, when Mr. Walker's petition for limited interdiction was granted, and he was appointed as Mr. Anderson's preliminary curator for the limited purpose of filing a personal injury lawsuit on behalf of Mr. Anderson.

interview Mr. Anderson and to file a report for the court's review. Judgment to this effect was signed December 3, 2020.

On January 7, 2021, Mr. Walker filed a supplemental and amended petition for interdiction, asserting Mr. Anderson "was injured in an accident and needs a legal representative to address his legal rights." DRLA filed exceptions on behalf of Mr. Anderson.

Mr. Walker filed a second supplemental and amended petition on February 3, 2021, requesting expedited consideration of his petition for limited interdiction, alleging "there is a substantial likelihood that grounds for interdiction exist, and substantial harm to Mr. Anderson's property is imminent. Any claims stemming from [Mr. Anderson's] March 2020 injuries will soon prescribe." DRLA again filed exceptions on behalf of Mr. Anderson.

Following a hearing on February 22, 2021, the trial court overruled Mr. Anderson's exceptions and entered a preliminary limited interdiction. In a judgment signed on March 4, 2021, Mr. Walker was appointed as preliminary curator, authorized "to evaluate and pursue any and all of Bruce Carlton Anderson's legal claims stemming from his March 2020 injuries[.]"[3] Said judgment also ordered that Mr. Anderson be evaluated by the Coroner for Rapides Parish, Jonathan Hunter ("Dr. Hunter"), with a report of the doctor's findings provided to the court.

---

[3] The trial court has discretion in granting a temporary or preliminary interdiction:

> When a petition for interdiction is pending, a court may order a temporary or preliminary interdiction when there is a substantial likelihood that grounds for interdiction exist and substantial harm to the health, safety, or property of the person sought to be interdicted is imminent.

La.Civ.Code art. 391.

The record reflects Mr. Walker settled claims against Leading Healthcare on behalf of Mr. Anderson. The claims were asserted for personal injuries sustained by Mr. Anderson in a scalding incident which occurred on or about March 20, 2020.

On October 11, 2022, Mr. Walker moved for full permanent interdiction of Mr. Anderson and requested an expedited hearing. Mr. Walker's motion also noted that Dr. Hunter evaluated Mr. Anderson on October 3, 2022, and a written report was submitted to the court on October 5, 2022.

Mr. Walker's request for full permanent interdiction of Mr. Anderson was heard on November 14, 2022. Thereafter, the trial court signed a judgment on December 1, 2022, which ordered Mr. Anderson "be placed under full permanent interdiction regarding his person and property[;]" appointed Mr. Walker as curator; and appointed Ms. Riley as undercuratrix. From this judgment, Mr. Anderson has appealed.[4]

### APPELLANT'S ASSIGNMENT OF ERROR

In his sole assignment of error relevant to this appeal, Mr. Anderson contends the "trial court erred in granting full interdiction when less restrictive means are available and/or erred in not granting a limited interdiction."

---

[4] The appeal in this matter was filed by DRLA on December 23, 2022. However, on March 16, 2023, upon motion by Mr. Walker, the trial court disqualified DRLA from representing Mr. Anderson and ordered DRLA and Ms. Bray to pay $7,000 as sanctions.

In April 2023, DRLA sought a supervisory writ and filed an appeal of the judgment of disqualification and sanctions. This court granted DRLA's writ, ordering Mr. Anderson's appeal of the interdiction judgment dated December 1, 2022, to be consolidated with DRLA's appeal of the judgment of disqualification and sanctions dated March 16, 2023. In addition, this court remanded this case with instructions for the trial court to appoint new counsel for Mr. Anderson in connection with the appeal of the judgment of interdiction presently at issue. *In Re: Bruce Carlton Anderson*, 23-213 (La.App. 3 Cir. 5/9/23) (unpublished writ opinion).

DRLA's appeal of the judgment of disqualification and sanctions is considered in the companion opinion also issued on this day in the matter appearing under docket number 23-432.

## APPELLANT'S ARGUMENTS

Mr. Anderson argues the trial court erred in finding that the evidence supported his full interdiction under La.Civ.Code art. 389. He asserts that a less restrictive alternative to full interdiction could have included the trial court ordering Leading Healthcare to add Mr. Walker and/or a neutral person to act as a supportive decision maker, in compliance with the Supported Decisionmaking Agreement Act ("SDM"), also known as the Dustin Gary Act, set forth in La.R.S. 13:4261.101–302. Alternatively, Mr. Anderson contends the trial court could have granted a limited interdiction that allowed the curator to make his decisions such as legal, medical, and financial matters, including making the decision as to what provider would care for him.

## APPELLEE'S POSITION

Mr. Walker argues the evidence that Mr. Anderson could not make reasoned decisions regarding his person and property was clear and convincing. Thus, he contends the trial court did not err in finding that full interdiction of Mr. Anderson was warranted.

## LAW

Louisiana Civil Code Article 389 provides:

> A court may order the full interdiction of a natural person of the age of majority . . . who due to an infirmity, is unable consistently to make reasoned decisions regarding the care of his person and property, or to communicate those decisions, and whose interests cannot be protected by less restrictive means.

The comments to Article 389 note that if a person is unable to make reasoned decisions regarding the care of his person and property, or to communicate those decisions, he is a candidate for full interdiction. *See* La.Civ.Code art. 389 cmt. c. Comment (e) to La.Civ.Code art. 389 further states:

4

Full interdiction is a last resort and, as a result, is warranted only when a person's interests cannot be protected by less restrictive means. A person's interests can be protected by less restrictive means if, for example, his interests (1) are currently being protected by other legal arrangements, including procuration, mandate, or trust, or (2) could be protected by other legal arrangements, including limited interdiction, see Civil Code Article 390 (Rev. 2000). If the court determines that less restrictive means can protect the defendant's interests, the court should deny full interdiction.

The petitioner in a full interdiction proceeding shall prove by clear and convincing evidence all facts justifying interdiction. *See* La.Code Civ.P. art. 4548. "To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." *In re Interdiction of Cockerton*, 21-1316, p. 7 (La.App. 1 Cir. 4/8/22), 341 So.3d 834, 839. "Whether interdiction is warranted is a finding of fact. Thus, the trial court's judgment will not be set aside in the absence of manifest error or unless it is clearly wrong." *Id.* *See also Stobart v. State, through DOTD*, 617 So.2d 880 (La. 1993).

## DISCUSSION

In this case, it is undisputed that Mr. Anderson requires full-time supervision and support in all his daily needs. Mr. Anderson was born with congenital cerebral maldevelopment which resulted in him having lifelong severe intellectual disabilities. He also suffers with right sided hemiplegia (partial paralysis) secondary to cerebral palsy, contracture of his fingers on both hands and toes on both feet, and contracture of his right wrist, all which significantly restrict his physical abilities.

Mr. Anderson lived with his mother, Betty Anderson ("Betty"), until he was eighteen. He then lived at Pinecrest Supports and Services Center ("Pinecrest"), a state-owned institution located in Pineville, Louisiana, that provides residential care for disabled individuals. In 2011, Mr. Anderson qualified for Louisiana's New Opportunities Waiver ("NOW"), a state program that allowed him to leave Pinecrest

5

and live in the community with in-home supportive services paid under Medicaid. Mr. Anderson's mother moved him out of Pinecrest and into his own apartment where he has been living since 2011 with twenty-four-hour supervised in-home care provided by direct service workers employed by Leading Healthcare. On March 17, 2020, Mr. Anderson's mother died. On March 20, 2020, Mr. Anderson suffered second and third degree burns on his feet, legs, groin, and back due to scalding hot bath water. He was hospitalized for several weeks and underwent surgeries and extensive rehabilitation as a result of his injuries.

At the trial on his request for full interdiction held on November 14, 2022, Mr. Walker testified he is Mr. Anderson's maternal uncle. He recalled that his sister Betty, Mr. Anderson's mother, died on a Tuesday. Two days later, Mr. Walker visited Mr. Anderson to pick out clothing and to inform Mr. Anderson's caretakers of Betty's funeral arrangements. When Mr. Anderson did not appear for his mother's funeral, Mr. Walker questioned employees of Leading Healthcare about Mr. Anderson. All Mr. Walker was told was that Mr. Anderson was in a hospital. He found Mr. Anderson in the burn unit of a hospital in Lafayette, Louisiana, after calling hospitals around the state.

According to Mr. Walker, Mr. Anderson suffered severe burns only three days after his mother's death because he could not care for himself and because of Leading Healthcare's negligence in its care of Mr. Anderson. In addition, Mr. Anderson could not manage his property, which included his inheritance from Betty, whose succession had not been opened as of the date of trial. Mr. Anderson's property also included the proceeds from the settlement of a personal injury lawsuit which Mr. Walker filed in 2021 against Leading Healthcare. Mr. Walker testified he requested full interdiction to guard Mr. Anderson's health and property, and to honor his sister's request that he ensure Mr. Anderson is "well taken care of."

6

Dr. Hunter, accepted at trial as a medical expert qualified to render opinions about a person's mental and intellectual abilities, evaluated Mr. Anderson and reviewed some of Mr. Anderson's medical records. Dr. Hunter prepared a written report as ordered by the trial court.[5] Dr. Hunter found Mr. Anderson to have a profound level of intellectual disability. In reviewing Mr. Anderson's medical records from the treating neurologist, Dr. Hunter noted that Mr. Anderson was diagnosed with epilepsy, intellectual disability, and schizencephaly (a congenital lack of formation of part of the brain). Dr. Hunter opined that these medical conditions would impair Mr. Anderson's ability to make reasoned decisions.

Dr. Hunter also confirmed that Mr. Anderson's Comprehensive Plan of Care ("CPOC")[6]—a requirement of the NOW program from which Mr. Anderson receives support—included a diagnosis of "severe intellectual disability." It was Dr. Hunter's opinion that Mr. Anderson could not have understood the series of items that are listed in the CPOC, nor did Mr. Anderson have the ability to make reasoned financial decisions or decisions regarding services that would impact the budget. Dr. Hunter concluded his testimony stating it was his medical opinion that Mr. Anderson is not intellectually capable of making reasoned decisions concerning his person and his property.

Counsel for Mr. Walker then called Mr. Anderson to testify. Mr. Anderson took the stand in order for the trial court to establish whether Mr. Anderson would invoke his right not to testify. Mr. Anderson was asked, "[W]ould you like to testify

---

[5] Dr. Hunter's report was admitted into evidence. After examining Mr. Anderson on October 3, 2022, Dr. Hunter reported: "Based on my impression of [Mr. Anderson's] cognitive capacity, I would place his executive function and reasoning to be commensurate with his level of assistance: both consistent and with a profound level of intellectual disability." Dr. Hunter concluded, "Mr. Anderson is not capable of independently managing his activities of daily living or his financial affairs without a high degree of assistance."

[6] Mr. Anderson's CPOC was entered into evidence as Mr. Walker's Exhibit No. 3.

7

here today?" He replied, "Yeah." Mr. Anderson said he did not remember meeting with his own attorney, Melanie Bray, and when asked if he knew when his mother passed away, he answered, "Died yesterday." Under cross-examination, Mr. Anderson declared "the supervisor" makes his decisions, though he did not provide a person's name.

Testimony was also heard from Amy Sherrie Jones ("Ms. Jones"), the assistant director of Leading Healthcare. Ms. Jones described Mr. Anderson as being independent and capable of making decisions. She stated Mr. Anderson is capable of doing everything except cooking for himself. According to Ms. Jones, Mr. Anderson decides what he wants to eat, what groceries he wants to buy, and he asks for help when he needs help.

Despite describing Mr. Anderson as independent, Ms. Jones acknowledged under cross-examination that Mr. Anderson's CPOC states that he requires full assistance with several tasks. Specifically, "Historical Information" provided in Mr. Anderson's CPOC, states, in pertinent part:

> [Mr. Anderson] needs full assistance to travel within the community, schedule and attend medical appointments, and full assistance with all aspects of monies—both coin and paper. [Mr. Anderson] needs full assistance to dial 911 and remain free from exploitation. [Mr. Anderson] must be monitored for choking while eating and he needs full assistance to take his medications. [Mr. Anderson] needs full assistance to make healthy meal choices and full assistance for all aspects of meal preparation. [Mr. Anderson] needs verbal prompting to complete activities thoroughly such as bathing, shaving, brushing teeth and hair, applying his acne medication, and to pick up his room.

Testimony was also heard from four other employees of Leading Healthcare: Sandra Barbin, Amy Jones, Tymeka Hobbs, and Zachary Ware; as well as from Raisha Harris, a support coordinator for Easterseals Louisiana. All testified as to their dealings with Mr. Anderson, describing his pleasant demeanor and his ability to communicate with them.

The initial question in this matter is whether Mr. Anderson is able to consistently make reasoned decisions regarding the care of his person and property, or to communicate those decisions as set forth in La.Civ.Code art. 389. Though described as independent and communicative, there is no dispute Mr. Anderson is profoundly intellectually disabled. Despite requiring direct service workers to be with him at all times, Mr. Anderson was scalded while bathing because he, purportedly, was left alone, turned on the hot water, and remained therein until someone noticed. The evidence indicates Mr. Anderson is unable to consistently make reasoned decisions regarding the care of his person.

As to his property, Mr. Anderson neither instituted nor directed anyone to initiate a negligence claim on his behalf, despite purportedly having legal representation. Mr. Walker acted on Mr. Anderson's behalf. The evidence indicates Mr. Anderson is unable to consistently make reasoned decisions regarding the care of his property.

The second consideration for a full interdiction is whether Mr. Anderson's interests can be protected by less restrictive means. Though in brief Mr. Anderson proposes that an alternative to full interdiction could have included Mr. Walker being added by Leading Healthcare as a supportive decision maker, the medical testimony from Dr. Hunter is that Mr. Anderson lacks the understanding to make this type of decision. Thus, we find no merit to Mr. Anderson's contention that an alternative to full interdiction exists.

Considering the evidence, we do not find manifest error in the trial court's determination that Mr. Anderson required full interdiction. The medical records prove by clear and convincing evidence and support the trial court's factual finding that Mr. Anderson is unable to make reasoned decisions regarding the care of his person and property.

## DECREE

The trial court's judgment of December 1, 2022, is affirmed.  Costs of this appeal are assessed to Appellant, Bruce Carlton Anderson.

**AFFIRMED.**

# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 23-432 consolidated with 23-431 and 23-213

**IN RE:  BRUCE CARLTON ANDERSON**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 268,928-A
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jonathan W. Perry, Sharon Darville Wilson, and Guy E. Bradberry, Judges.

**AFFIRMED IN PART;**
**REVERSED IN PART.**

**Paul J. Politz**
**Samantha P. Griffin**
**Taylor, Wellons, Politz & Duhe LLC**
**1555 Poydras Street, Suite 2000**
**New Orleans, Louisiana  70112**
**(504) 525-9888**
**COUNSEL FOR APPELLANT:**
    **Disability Rights Louisiana and**
    **Melanie Bray**


**Pierre F. Gremillion**
**3500 N. Hullen Street**
**Metairie, Louisiana  70002**
**(504) 495-3165**
**COUNSEL FOR CURATOR/APPELLEE:**
    **Carey Wayne Walker, Sr.**


**Maria A. Losavio**
**Losavio Law Office, LLC**
**1821 MacArthur Drive**
**Post Office Box 12420**
**Alexandria, Louisiana 71315-2420**
**(318) 767-9033**
**COUNSEL FOR:**
    **Bruce Carlton Anderson**

**PERRY, Judge.**

Melanie Bray ("Ms. Bray") and the legal organization of Disability Rights Louisiana ("DRLA") (hereinafter collectively referred to as "Appellants") suspensively appeal a trial court judgment ordering their disqualification and awarding sanctions against them in the amount of $7,000. For the following reasons, we affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2022, the trial court signed a judgment which ordered the full permanent interdiction of Bruce Carlton Anderson ("Mr. Anderson") and appointed his maternal uncle, Carey Wayne Walker, Sr. ("Mr. Walker"), as curator.[1] On December 16, 2022, Mr. Walker filed a Motion to Disqualify Counsel of Record and Request for Sanctions, alleging Appellants "do not have legally valid consent to represent Mr. Anderson, a known developmentally and cognitively disabled person, in accordance with [La.R.S.] 28:454.3." Mr. Walker sought sanctions under La.Code Civ.P. art. 863, alleging Appellants "caused extensive delay and costs" in the interdiction litigation.

Mr. Walker's request for disqualification of and sanctions against Appellants was heard on March 13, 2023.[2] The trial court granted Mr. Walker's motion to disqualify counsel and ordered Appellants to pay $7,000 as sanctions.

---

[1] Prior to the judgment of disqualification and sanctions at issue herein, Appellants represented Mr. Anderson in interdiction proceedings instituted by Mr. Walker. For more procedural background and facts about the interdiction proceedings, see the companion opinion also issued on this day in the appeal of the judgment of interdiction, appearing under docket number 23-431.

[2] On April 13, 2023, Appellants sought a supervisory writ and an appeal of the judgment now before this court. This court granted Appellant's writ. Mr. Anderson's appeal of the judgment of interdiction dated December 1, 2022, was consolidated with Appellant's appeal of the present judgment of disqualification and sanctions dated March 16, 2023, and this case was remanded with instructions for the trial court to appoint new counsel for Mr. Anderson in connection with the appeal of the judgment of interdiction. *In Re: Bruce Carlton Anderson*, 23-213 (La.App. 3 Cir. 5/9/23) (unpublished writ opinion).

## APPELLANTS' ASSIGNMENTS OF ERROR

Appellants are now before this court asserting three assignments of error:

1.    The trial court erred in disqualifying retained counsel for the defendant in an interdiction proceeding where Louisiana Code of Civil Procedure Article 4544 permits the defendant to retain his own counsel or mandates that the court appoint counsel.

2.    The trial court erred in disqualifying retained counsel for the defendant in an interdiction pursuant to Louisiana Revised Statute[s] 28:454.3 where Louisiana Code of Civil Procedure [A]rticle[s] 684(B) and 4554 provide that an interdicted person maintains procedural capacity for purposes of modifying or terminating the judgment of interdiction.

3.    The trial court erred in disqualifying and sanctioning retained counsel $7,000 based on the filing of meritorious pleadings (including three supervisory writs that were granted by this Court) in violation of Louisiana Code of Civil Procedure Article 863.

## APPELLANTS' ARGUMENTS

Appellants allege Mr. Anderson was presumed to have capacity until the judgment of interdiction was entered, they were properly retained to challenge the interdiction proceedings filed by Mr. Walker against Mr. Anderson, and the trial court's judgment of disqualification improperly deprived Mr. Anderson of his right to counsel. Appellants argue the trial court's judgment of disqualification violates La.Code Civ.P. art. 4544,[3] which requires appointment of an attorney to represent a defendant in interdiction proceedings if no attorney is retained by a defendant. Appellants further argue the trial court's judgment of disqualification is contrary to

---

[3] According to La.Code Civ.P. art. 4544(A):

> If the defendant makes no timely appearance through an attorney, the petitioner shall apply for an order appointing an attorney to represent the defendant. Pursuant to such a motion, or on its own motion, the court shall appoint an attorney to represent the defendant. If the defendant either retains his own attorney, or intelligently and voluntarily waives the assistance of an attorney, the court shall discharge the court-appointed attorney. The court-appointed attorney shall represent the defendant until discharged by the court.

La.Code Civ.P. arts. 684(B)[4] and 4554,[5] which provide that an interdicted person maintains procedural capacity for purposes of modifying or terminating the judgment of interdiction.

Additionally, Appellants contend the trial court wrongly imposed sanctions for purportedly delaying Mr. Anderson's interdiction and increasing costs in these proceedings. Appellants deny causing needless delay, but, instead, insist they were advocating for Mr. Anderson to ensure that Mr. Walker followed the proper procedures in these interdiction proceedings. Appellants point to supervisory writs which this court granted as evidence of their effectual advocacy for Mr. Anderson.

**APPELLEE'S POSITION**

Mr. Walker alleges Appellants did not have legally valid consent to represent Mr. Anderson, a known developmentally and cognitively disabled person, because the requirements of La.R.S. 28:454.3(C)[6] were not followed. Thus, Mr. Walker contends the trial court's judgment of disqualification should be affirmed.

---

[4] Louisiana Code of Civil Procedure Article 684(B) provides, "Except as provided in Articles 4431, 4554, and 4566, the curator is the proper plaintiff to sue to enforce a right of an interdict."

[5] According to La.Code Civ.P. art. 4554:

> On motion of the court of any person, including the interdict, the court may modify or terminate its judgment when the court finds, by a preponderance of the evidence, that the terms of that judgment are currently either excessive or insufficient or that the ability of the interdict to care for his person has so changed as to warrant modification or termination. Except for good cause, the court shall follow substantially the same procedures that apply to an original petition for interdiction before it modifies or terminates an interdiction judgment.

[6] Under La.R.S. 28:454.3(C), before a person with a developmental disability can be deemed to have given legally adequate consent for decisions concerning matters that have important legal consequences, the following conditions must be met:

(1) The person has not been placed under a judgment of interdiction or continuing tutorship that restricts the right of the person to make the decision in question.

(2) The person has capacity to consent and has been informed of the purposes, consequences, and risks of the decision being made and the benefits of any alternative decision.

Mr. Walker also contends the trial court correctly sanctioned Appellants under La.Code Civ.P. art. 863 for harassing, causing unnecessary delay, or needlessly increasing the costs of this litigation. According to Mr. Walker, his legal fees and costs exceed $20,000.

## LAW AND DISCUSSION

*Disqualification of Counsel*

"A motion to disqualify counsel requires the court to balance several important factors: (1) the right of a party to retain counsel of his choice; and (2) the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system." *Keith v. Keith*, 48,919, p. 10 (La.App. 2 Cir. 5/15/14), 140 So.3d 1202, 1209. "The burden of proving disqualification of an attorney rests on the party making the challenge." *Id.* "Disqualification issues must be decided on a case-by-case basis." *Id.*

In his motion to disqualify counsel, Mr. Walker's arguments before the trial court focused on an alleged conflict of interest between Appellants and Leading Healthcare of Louisiana of Pineville ("Leading Healthcare").[7] The record reflects Mr. Anderson's court-appointed curator ad hoc, Joseph Kutch,[8] recognized that someone on the support staff of Leading Healthcare initially contacted Appellants, not Mr. Anderson. Additionally, Mr. Walker fought to initiate a negligence claim

---

(3) The person understands that his withholding or withdrawing of consent shall not prejudice future provision of care and services to him.

(4) The person is giving such consent voluntarily and free from coercion and undue influence.

[7] Mr. Anderson lived in an apartment with twenty-four-hour care provided by Leading Healthcare.

[8] Joseph Kutch served as curator ad hoc until March 2021, when Mr. Walker's petition for limited interdiction was granted, and he was appointed as Mr. Anderson's preliminary curator for the limited purpose of filing a personal injury lawsuit on behalf of Mr. Anderson.

4

against Leading Healthcare on Mr. Anderson's behalf, whereas Appellants seemingly advocated against Mr. Anderson's interests by arguing:

> [Mr. Walker] is asserting that a soon to prescribe right to file a personal injury lawsuit is a substantial harm to Mr. Anderson's property. [Mr. Walker] has not shown that such a right is within the meaning of "property," and regardless, [Mr. Walker] has not shown that "substantial harm" to Mr. Anderson's property exists.[9]

Before the trial court, Mr. Walker argued for disqualification because Appellants' interests actually opposed Mr. Anderson's interests—Appellants' actions, or lack thereof, could have led to the prescription of Mr. Anderson's negligence claim against Leading Healthcare.

Notwithstanding the history of Appellants' representation of Mr. Anderson, our review of the decision to disqualify Appellants from representing Mr. Anderson centers less on procedural strategies and more on the timing of Appellants' disqualification. While Appellants are correct that Mr. Anderson is entitled to representation to oppose Mr. Walker's motion for interdiction, the record reflects Mr. Anderson has had representation throughout these proceedings. Even after Appellants' disqualification by the trial court, this court ordered new counsel to be appointed to represent Mr. Anderson in his appeal of the judgment of interdiction. *See In Re: Anderson*, 23-213 (La.App. 3 Cir. 5/9/23) (unpublished writ opinion).

In addition, a judgment placing Mr. Anderson under full permanent interdiction was granted by the trial court in December 2022 has been affirmed by this court in the companion opinion also issued on this day. *See In Re: Anderson*, 23-431 (La.App. 3 Cir. 4/3/24), ___ So.3d ___. Consequently, Mr. Walker, as curator, is the proper party to act on behalf of Mr. Anderson. *See* La.Code Civ.P.

---

[9] This argument appears in Appellants' peremptory exception of no cause of action filed in February 2021, in response to Mr. Walker's petition for limited interdiction. At that time, Mr. Walker sought to be appointed as Mr. Anderson's preliminary curator for the limited purpose of filing a personal injury lawsuit against Leading Healthcare before Mr. Anderson's negligence claim prescribed in March 2021.

art. 684. Thus, the questions surrounding the correctness of the trial court's judgment of Appellants' disqualification are now moot.

*Sanctions*

Appellants argue that the trial court erred in awarding sanctions under La.Code Civ.P. art. 863. We agree.

Louisiana Code of Civil Procedure Article 863(B)(1) allows the imposition of sanctions if a finding is made that the pleading is "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *See also* La.Code Civ.P. art. 863(D). But, "[t]he imposition of sanctions is 'used only in exceptional circumstances, and when there is even the slightest justification for the assertion of a legal right, sanctions are not warranted.'" *Capdeville v. Winn Dixie Store #1473*, 07-1425, p. 5 (La.App. 3 Cir. 4/9/08), 981 So.2d 121, 125 (quoting *Curole v. Avondale Indus., Inc.*, 01-1808, p. 5 (La.App. 4 Cir. 10/17/01), 798 So.2d 319, 322). "A trial court's decision to award sanctions under La.Code Civ.P. art. 863 is reviewed for manifest error." *Boudreaux v. Boudreaux*, 22-804, p. 19 (La.App. 3 Cir. 7/5/23), 368 So.3d 754, 765.

In its ruling on the imposition of a sanction against Appellants, the trial court stated:

> [S]o the Court will disqualify Disability Rights Louisiana, along with Melanie Bray. And because of this -- this has -- this litigation has been protracted. And after [the Coroner for Rapides Parish, Jonathan Hunter ("Dr. Hunter")] testified, it was clear to me, it was clear [Mr. Anderson] could not have hired an attorney, and I don't know how clear he could have gotten. So, and I just think things have still gone on, despite even his testimony.
>
> So the Court issues Sanctions in the amount of Seven Thousand Dollars ($7,000.00).

On appeal, Appellants deny filing any pleadings in this matter for an improper purpose. They contend several pleadings filed in this matter, including three

6

exceptions and three writ applications, were either granted by the trial court, rendered moot by Mr. Walker's filing of an amended petition, or granted by this court. Prior to their disqualification, Appellants filed three writ applications with this court on behalf of Mr. Anderson, seeking supervisory review of different trial court rulings. An examination of the substance and timing of Appellants' writs is worth discussing.

Mr. Walker's Petition for Interdiction was filed on September 10, 2020, and supplemental and amended petitions were filed on January 7, 2021 and February 3, 2021. On March 4, 2021, Mr. Walker was granted a preliminary limited interdiction, authorizing him to pursue negligence claims on Mr. Anderson's behalf against Leading Healthcare. The judgment also declared, "[t]he preliminary limited interdiction terminates 30 days after the judge signs it . . . " and ordered Dr. Hunter to evaluate Mr. Anderson within thirty days and report his findings to the trial court.

Over a year later, in September 2022, Mr. Walker filed a motion to extend the preliminary limited interdiction, and that motion was granted the same day. Appellants filed a motion to vacate the order on the ground that the extension request had been filed untimely under La.Civ.Code art. 397.[10] The trial court denied the motion to vacate, and Appellants filed a writ application with this court on October 24, 2022. We granted Appellants' writ, vacating the trial court's order which extended the preliminary limited interdiction order signed March 4, 2021, because it terminated thirty days after it was signed. *See In Re: Anderson*, 22-685 (La.App. 3 Cir. 11/10/22) (unpublished writ opinion).

On October 11, 2022, Mr. Walker filed a motion seeking to have a hearing scheduled on his motion for full permanent interdiction of Mr. Anderson and seeking

---

[10] Under La.Civ.Code art. 397, a preliminary interdiction granted following an adversarial hearing may be extended for a period not to exceed thirty days.

7

to have counsel for Mr. Anderson appear at the permanent interdiction hearing to testify and produce documents reflecting the communications of counsel which involved Mr. Anderson. Mr. Walker's motion was granted ex parte by the trial court, and the permanent interdiction hearing was scheduled for October 17, 2022. On October 13, 2022, Appellants filed a motion to set aside the order which scheduled the hearing and compelled counsel for Mr. Anderson to appear and produce documents. Appellants filed an emergency writ application, which we granted, vacating the hearing set for October 17, 2022. *See In Re: Anderson*, 22-655 (La.App. 3 Cir. 10/14/22) (unpublished writ opinion).[11]

Appellants also filed a writ application seeking review of the trial court's order compelling counsel for Mr. Anderson to appear at the permanent interdiction hearing and produce documents relating to the representation of Mr. Anderson. Appellants argued the trial court erred when it failed to hold a hearing mandated by La.Code Evid. art. 508. In his opposition, Mr. Walker declared that he was agreeable to striking and vacating that portion of the trial court's order which required Mr. Anderson's counsel to appear at the permanent interdiction hearing and to produce documents relating to representation. Thus, we granted Appellants' writ, reversing that portion of the trial court's order. *See In Re: Anderson*, 22-723 (La.App. 3 Cir. 11/10/22) (unpublished writ opinion).

We find no evidence that Appellants filed pleadings for any improper purpose, so as to harass, delay, and increase costs herein. Appellants raised valid contentions to ensure proper procedures were followed in the interdiction proceedings against Mr. Anderson, as clearly evidenced by the above-mentioned writs to this court. We,

---

[11] As a result, the hearing on Mr. Walker's request for full, permanent interdiction was rescheduled for November 14, 2022.

8

therefore, find the trial court manifestly erred in granting Mr. Walker's request for sanctions pursuant to La.Code Civ.P. art. 863.

We additionally find that the trial court failed to comply with the mandate of La.Code Civ.P. art. 863(G) to "describe the conduct determined to constitute a violation of the provisions of this Article and explain the basis for the sanction imposed." The trial court neither described the conduct which it determined to constitute a violation of La.Code Civ.P. art. 863 nor explained the basis for the sanction. The trial court's opinion that "this litigation has been protracted" does not justify its imposition of sanctions.[12] For these reasons, we reverse the trial court's award of sanctions in the amount of $7,000 against Appellants.

## DECREE

We affirm the part of the trial court's judgment dated March 16, 2023, granting Carey Wayne Walker, Sr.'s motion to disqualify counsel of record; however, we reverse the part of the judgment that granted sanctions against Melanie Bray and Disability Rights Louisiana. Costs of this appeal are divided equally between Appellee, Carey Wayne Walker, Sr., and Appellants, Melanie Bray and Disability Rights Louisiana.

**AFFIRMED IN PART; REVERSED IN PART.**

---

[12] The record reflects a delay from when Dr. Hunter was ordered to evaluate Mr. Anderson, March 4, 2021, to when Dr. Hunter ultimately submitted his report to the trial court, October 5, 2022. This delay appears attributable to Dr. Hunter not being immediately served with the trial court's order as well as to limitations imposed due to the COVID-19 pandemic which hindered Dr. Hunter's ability to evaluate Mr. Anderson.